# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 93 C 4017 | **DATE** | 5/1/2000 |
| **CASE TITLE** | Thomas & Betts Corp. et al.  Vs. Panduit Corp. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Memorandum Opinion and Order

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)　☐ General Rule 21　☐ FRCP41(a)(1)　☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]　Enter Memorandum Opinion and Order. We grant defendants' motion for summary judgment and accordingly dismiss counts III through X and XII through XVII. We grant summary judgment not because plaintiff has no right to a remedy but because the claims advanced in those counts are covered by the Illinois Trade Secrets Act. Counts I, II, and XI remain intact. Status hearing set for May 12, 2000 at 9:45am.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | MAY 0 2 2000 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| WAH | courtroom deputy's initials | 00 MAY -1 AM 9: 57 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THOMAS & BETTS CORPORATION and )
THOMAS & BETTS HOLDINGS, INC., )
New Jersey corporations, )
         )
         Plaintiffs, )
         )
vs. )   No. 93 C 4017
         )
PANDUIT CORP., a Delaware corporation, )
and JEFFREY WIMMER, an individual, )
         )
         Defendants. )

DOCKETED
MAY 0 2 2000

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas & Betts Corporation and Thomas & Betts Holdings, Inc. (collectively "T&B") have filed a seventeen-count complaint against competitor Panduit Corp. (Panduit) and former employee Jeffrey Wimmer (Wimmer) (collectively "defendants"), alleging misappropriation of confidential information in violation of contract, tort, and state statutory law. Defendants have moved for summary judgment with respect to fourteen of the seventeen counts. For the reasons set forth below, we grant defendants' motion.

## BACKGROUND

The facts underlying this lawsuit (as well as the acrimonious tone of the litigation) have been described in the numerous prior opinions issued in this case, and therefore our summary here will be brief. Wimmer worked at T&B from 1965 to 1992. For much of his tenure Wimmer was the vice-president of sales for the central region of T&B's electrical division. Wimmer's position provided him with access to confidential information, and therefore he was required by T&B to execute an Employment Priority Information & Invention Agreement

(the confidentiality agreement). The confidentiality agreement provided that Wimmer would surrender confidential information upon his departure from T&B and would not disclose T&B's confidential information to others (Cplt. Exh. A).

On January 2, 1992, T&B merged with American Electric Company, precipitating a reorganization that resulted in Wimmer's termination. Wimmer was informed of his termination on February 6, 1992, when he met with Michael J. McBride (McBride), president of T&B's electrical division, and Richard Lovell (Lovell), director of personnel for T&B's electrical division (Def. 12(M) and T&B 12(M) Resp. at ¶¶ 13-24). There is some dispute as to whether McBride agreed during this meeting to allow Wimmer to retain possession of a computer that Wimmer had been using at his home (Def. 12(M) and T&B 12(M) Resp. at ¶¶ 22-23). In any event, Wimmer has not returned that home computer to T&B. The parties also dispute the extent to which McBride permitted Wimmer to use his office at T&B after his termination (Def. 12(M) and T&B 12(M) Resp. at ¶ 24). It is undisputed, however, that Wimmer continued to use his T&B office until near the end of February (Def. 12(M) at ¶ 28). According to T&B, Wimmer removed at least part of a computer, a number of disks, and thousands of documents from his T&B office sometime prior to the end of February 1992 (T&B 12(N) at ¶¶ 8-10). T&B claims that the computers, disks,and documents taken and wrongfully retained by Wimmer contain secret sales data and related confidential information about T&B's business.

In June 1992, Wimmer began working for Panduit, a competitor of T&B. When T&B learned of Wimmer's new job it expressed its concerns regarding Wimmer's knowledge of T&B's confidential information (Cplt. Exhs. F & G). In a letter dated June 1, 1992, an

attorney for Panduit advised T&B that Panduit had directed Wimmer not to disclose any confidential information he had acquired while working at T&B (Cplt. Exh. K). Enclosed with the letter was Panduit's employment agreement with Wimmer, which provided that Wimmer would not disclose any information in violation of his confidentiality agreement with T&B (Cplt. Exh. L). In 1993, T&B hired Michael Ferraro, a former Panduit market research manager, and subsequently learned that Wimmer possessed the computers, disks and documents containing T&B's confidential information and that defendants were using that information in the operation of Panduit's business. T&B subsequently filed this lawsuit on July 2, 1993.

At bottom, T&B claims that defendants wrongfully took confidential information from T&B and used that information to undermine T&B's business. T&B weaves this straightforward claim into a seventeen-count complaint, alleging breach of contract (Count I), misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq. (Counts II and XI), breach of fiduciary duty (Count III), conversion (Counts IV and XII), unfair competition (Counts V and XIII), tortious interference with business relations (Counts VI and XIV), fraud (Count VII & XV), violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. (Counts VIII and XVI), conspiracy (Counts IX and XVII), and tortious interference with a contract (Count X). In a prior order we addressed defendants' partial motion for summary judgment regarding Counts I and X. See Thomas & Betts Corp. v. Panduit Corp., 1999 WL 261861 (N.D. Ill. Apr. 8, 1999). Defendants now move for summary judgment with respect to Counts III-X and XII-XVII. Defendants do not challenge T&B's claims for breach of contract (Count I) and misappropriation of trade secrets (Counts II and

XI), but argue that all of T&B's other causes of action are preempted by the Illinois Trade

Secrets Act (ITSA). We agree and therefore grant defendants' motion.

## DISCUSSION

Under Section 8 of the ITSA, non-contract causes of action are preempted to the extent

that they are based on a misappropriation of trade secrets. Specifically, Section 8(a) states:

> Except as provided in subsection (b), this Act is intended to displace conflicting
> tort, restitutionary, unfair competition, and other laws of this State providing
> civil remedies for misappropriation of a trade secret.

765 ILCS 1065/8(a). The ITSA's preemption provision is not without limits, however, as

Section 8(b) provides that the ITSA does not affect or displace

> (1) contractual remedies, whether or not based upon misappropriation of a
> trade secret, ...;
> (2) other civil remedies that are not based upon misappropriation of a trade
> secret;
> (3) criminal remedies, whether or not based upon misappropriation of a trade
> secret; or
> (4) the definition of a trade secret contained in any other Act of this State.

765 ILCS 1065/8(b). The Seventh Circuit has observed that with the passage of the ITSA,

"Illinois ... abolished all common law theories of misuse of [secret] information." Composite

Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265 (7th Cir. 1992); see PepsiCo,

Inc. v. Redmond, 54 F.3d 1262, 1269 (7th Cir. 1995) ("The ITSA abolishes any common law

remedies or authority contrary to its own terms."). Indeed, the ITSA was meant "to codify all

the various common law remedies for theft of ideas." Learning Curve Toys, L.P. v. Playwood

Toys, Inc., 1999 WL 529572, *3 (N.D. Ill. July 20, 1999). As the Seventh Circuit held in

Composite, "Unless defendants misappropriated a (statutory) trade secret, they did no legal

wrong." Composite, 962 F.2d at 1265. In other words, facts constituting a misappropriation

of trade secrets give rise to liability under the ITSA, but not under any other state law theory.

Defendants argue that all of the seventeen counts contained in T&B's complaint arise from an alleged misappropriation of trade secrets and therefore, other than the breach of contract and ITSA causes of action, T&B's claims run afoul of Section 8 of the ITSA. The case law supports defendants' argument. Illinois courts, both at the state and federal level, repeatedly have applied Section 8 of the ITSA to preempt non-contract claims to the extent that they are based on a misappropriation of trade secrets. *See, e.g.*, Composite, 962 F.2d at 1265; Learning Curve, 1999 WL 529572, at *3-4; Nilssen v. Motorola, Inc., 963 F. Supp. 664, 683-84 (N.D. Ill. 1997); Thermodyne Food Service Products, Inc. v. McDonald's Corp., 940 F. Supp. 1300, 1309 (N.D. Ill. 1996); C&F Packing Co., Inc. v. IBP, Inc., 1994 WL 30540, at *6-7 (N.D. Ill. Feb. 1, 1994) (applying nearly identical provision of Kansas statute); Chicago Show Printing Co. v. Sherwood, 1992 WL 175577, at *3 (N.D. Ill. July 14, 1992); Pope v. Alberto-Culver Co., 694 N.E.2d 615, 619 (Ill. App. 1 Dist. 1998). Therefore, under Section 8 and its case law progeny, we must review the challenged counts of T&B's complaint to determine whether they are based on a misappropriation of trade secrets, or on something more. To the extent that Counts III-X and XII-XVII are based on a misappropriation of trade secrets, they are preempted by the ITSA.

## I. Breach of Fiduciary Duty

Count III of the complaint alleges that Wimmer breached his fiduciary duty to T&B. In support of this claim, T&B asserts that Wimmer wrongfully took secret sales data and related confidential information from T&B, disclosed that information to Panduit, and used that information while at Panduit to the detriment of T&B (Def. 12(M) and T&B 12(M) Resp.

at ¶¶ 43-45). These factual allegations simply accuse Wimmer of misappropriating T&B's trade secrets. Under the ITSA, a trade secret is "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers...." 765 ILCS 1065/2(d). The evidence is substantial that the confidential sales data and related information that Wimmer allegedly took from T&B constitute trade secrets under the statute. Furthermore, the ITSA defines misappropriation to include acquisition by "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means." 765 ILCS 1065/2(a) and (b). Again, Wimmer's alleged conduct falls squarely within the meaning of the statute. Since the actions T&B complains of in its breach of fiduciary duty claim against Wimmer simply constitute allegations of a misappropriation of trade secrets, Count III is preempted by Section 8 of the ITSA. *See* Composite, 962 F.2d at 1269 (preempting fiduciary duty claim under Section 8); Thermodyne, 940 F. Supp. at 1309 (same); J.H. Chapman Group, Ltd. v. Chapman, 1996 WL 89075, at *2-3 (N.D. Ill. Feb. 28, 1996) (same); Venango River Corp. v. Nipsco Industries, Inc., 1994 WL 702759, at *8 (N.D. Ill. Dec. 15, 1994) (same); C&F Packing, 1994 WL 30540, at *6-7.[1]

  T&B attempts to avoid preemption by arguing that its fiduciary duty claim against

---

[1]T&B refers us to Combined Metals of Chicago Ltd. v. Airtek, Inc., 985 F. Supp. 827, 830 (N.D. Ill. 1997) and EarthDweller, Ltd. v. Rothnagel, 1993 WL 487546, at *7 (N.D. Ill. Nov. 22, 1993), in which breach of fiduciary duty claims were not preempted under Section 8. However, the arguments in Airtek and EarthDweller were presented at the "preliminary stage" of a motion to dismiss (EarthDweller, 1993 WL 487546, at *7), and not, as here, on a motion for summary judgment presented seven years into the litigation. T&B has had the opportunity to develop its factual allegations, but has failed to set its breach of fiduciary duty claim apart from its misappropriation of trade secrets allegations.

Wimmer is based not only on the taking of confidential information, but also on Wimmer's theft of T&B's computers, disks, and documents. These physical items, however, have no real value apart from the confidential information contained in them. In its discovery responses and other submissions, T&B has stated that Wimmer breached his fiduciary duty by "taking, possession and use of T&B's computer and innumerable hard disk, floppy disks, computer files, and documents *containing [T&B]'s confidential and trade secret information*" (T&B Exh. G at 10) (emph. added). As T&B's discovery responses confirm, this seven-year old litigation is not about pieces of computer hardware or sheets of paper, but about the information contained in those items.

T&B also argues that preemption is improper because the confidential information taken by Wimmer may not rise to the level of a trade secret. However, this theory would render Section 8 meaningless, for it would forbid preemption of state law claims until a final determination has been made with respect to whether the confidential information at issue rises to the level of a trade secret. Not surprisingly, therefore, T&B's argument has been rejected by the courts. *See* Learning Curve, 1999 WL 529572, at *2-3; *see also* Composite, 962 F.2d at 1265 ("Unless defendants misappropriated a (statutory) trade secret, they did no legal wrong. ... Nothing turns on whether we call these "trade secrets' or ... 'trade secret, proprietary or confidential information.'"). We are not unmindful of the concerns raised by T&B, but point out that T&B's confidentiality agreement with Wimmer and its concomitant breach of contract claim remain intact and provide adequate protection with respect to this issue.

T&B is correct to point out that Section 8 of the ITSA does not authorize blanket

preemption; instead, the provision preempts claims only to the extent that they are based on a misappropriation of trade secrets. But T&B's breach of fiduciary duty claim in this case simply alleges that Wimmer took, disclosed and used confidential information. These factual allegations are preempted by Section 8 of the ITSA, compelling summary judgment in favor of defendants with respect to Count III.

## II. Conversion

In Counts IV and XII, T&B alleges conversion by accusing Wimmer and Panduit of taking computers, disks, and documents containing confidential information from T&B (Cplt. at ¶ 33; T&B 12(M) Resp. at ¶¶ 82-83; T&B 12(N) at ¶¶ 8-13). Just like its breach of fiduciary duty claim, T&B's factual allegations here assert nothing more than a misappropriation of trade secrets. Courts in this district have held that Section 8 of the ITSA preempts conversion claims to the extent that they are based on a misappropriation of trade secrets. *See* Sherwood, 1992 WL 175577, at *3; Ace Novelty Co., Inc. v. Vijuk Equipment, Inc., 1990 WL 129510, at *3-4 (N.D. Ill. Aug. 31, 1990). T&B again attempts to avert summary judgment by arguing that its conversion counts are based not only on the theft of confidential information, but also on the taking of the actual computers, disks, and paper belonging to T&B. As we discussed above, these physical items have little value apart from the information contained therein[2] and therefore we grant summary judgment in favor of defendants with respect to Counts IV and XII of the complaint.

---

[2]Unlike Sherwood, 1992 WL 175577, at *3, in which the conversion claim was based in part on the taking of a physical invention, the tangible items taken by defendants here have but an immateial intrinsic value.

III. <u>Unfair Competition</u>

In Counts V and XIII of the complaint T&B accuses defendants of engaging in unfair competition. In support of these counts T&B details the various business strategies Panduit implemented in its effort to exploit the confidential information taken from T&B. For example, T&B asserts that defendants used the confidential information to attempt to convert T&B's distributor sales; make inroads into the MRO market and convert T&B's sales to distributors and end-users in that market; develop Panduit's Barb-Ty product and convert T&B's competing cable tie product sales; undermine T&B's Signature Service Program; and develop and implement Panduit's Delta, PEP and CEP programs to convert T&B's sales (Cplt. at ¶ 37; T&B 12(M) Resp. at ¶¶ 46-48; T&B 12(N) at ¶¶ 36-85; T&B Exhs. G & L). These factual allegations, though lengthy, simply describe how defendants used the confidential information taken from T&B. As such, the allegations are a restatement of T&B's misappropriation of trade secrets claim. *See* 765 ILCS 1065/2(b)(2) (defining misappropriation as the unauthorized "<u>use</u> of a trade secret"). Section 8 expressly preempts such allegations. 765 ILCS 1065/8(a) (displacing "unfair competition" claims to the extent they are based on a misappropriation of trade secrets); *see* <u>Composite</u>, 962 F.2d at 1269 (preempting unfair competition claim under Section 8); <u>Cohn v. Taco Bell Corp.</u>, 1994 WL 13769, at *9-10 (N.D. Ill. Jan. 14, 1994) (same); <u>C&F Packing</u>, 1994 WL 30540, at *6-7. Therefore, we grant defendants' motion with respect to Counts V and XIII.

IV. <u>Tortious Interference with Business Relations</u>

In Counts VI and XIV, T&B alleges that defendants tortiously interfered with T&B's business relations with its customers. These two counts are akin to T&B's unfair competition

claims, and suffer a similar fate.  In support of these claims T&B cites the same acts of

wrongdoing that comprise its unfair competition allegations and argues that this conduct

damaged T&B's relationships with 881 customers (T&B 12(M) Resp. ¶ 49-66). In other words,

T&B claims that defendants tortiously interfered with T&B's relationships with its customers

by engaging in a misappropriation of -- *i.e.,* unauthorized "use of" (765 ILCS 1065/2(b)(2)) --

trade secrets and confidential information.  Based on the very same factual allegations that

form the basis of T&B's misappropriation of trade secrets claim, Counts VI and XIV are

preempted by Section 8 of the ITSA. *See* <u>Composite</u>, 962 F.2d at 1269; <u>Learning Curve</u>, 1999

WL 529572, at *3 ("if the operative facts are arguably cognizable under the ITSA, any

common law claim that might have been available on those facts in the past now no longer

exists in Illinois").

## V. <u>Fraud</u>

In Count VII, T&B alleges that Wimmer committed fraud by misrepresenting and

concealing his intention to take the computers, disks and documents containing confidential

information from T&B.  Specifically, T&B claims that Wimmer intentionally misled McBride

and Lovell during their February 6, 1992, meeting and in subsequent dealings in order to gain

access to his office at T&B and remove confidential information.  Furthermore, T&B alleges

that Wimmer continued to fraudulently conceal his possession, disclosure and use of the

confidential information while at Panduit (T&B 12(M) Resp. at ¶¶ 67-69; T&B 12(N) at ¶¶ 2-7,

14-17; T&B Exh. G).  With respect to Panduit, T&B alleges in Count XV that Panduit

misrepresented and fraudulently concealed its intention to direct Wimmer to disclose T&B's

trade secrets and concealed its actual use of that confidential information in its business

operations. In support of its claim, T&B points to the June 1, 1992, letter from Panduit, in which Panduit states that it had directed Wimmer not to disclose any confidential T&B information (Cplt. at ¶¶ 35-36; T&B 12(M) Resp. at ¶¶ 71-77; T&B 12(N) at ¶¶ 26-32). Based on these same factual grounds, T&B also alleges, in Counts VIII and XVI, that defendants violated the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (T&B 12(M) Resp. at ¶¶ 78-81).

All of these factual allegations amount to a claim that defendants misrepresented, concealed, and lied about the taking and use of T&B's confidential information. As such, these allegations merely restate T&B's claim for misappropriation of trade secrets. Under the ITSA, a misappropriation is an acquisition by improper means, including by "misrepresentation." 765 ILCS 1065/2(a). Therefore, T&B adds nothing more to its ITSA claim by alleging that defendants lied about misappropriating a trade secret. T&B's fraud claims are preempted by Section 8 of the ITSA, and therefore we grant defendants' motion with respect to Counts VII, VIII, XV and XVI. See C&F Packing, 1994 WL 30540, at *6-7 (preempting fraud claims where defendant allegedly made false promises in an attempt to obtain trade secrets and then concealed its efforts to use those trade secrets); *see also* Venango, 1994 WL 702759, at *8 (referring to magistrate judge's recommendation that fraud claim be preempted and holding that claim could also be barred on alternative grounds).[3]

_____

[3]While T&B's Consumer Fraud Act claim is based on state statutory law, not common law, we see no reason why Section 8 of the ITSA does not apply to preempt that claim to the extent that it is based on a misappropriation of trade secrets. See 765 ILCS 1065/8(a) (displacing "conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret."); *but see* Learning Curve, 1999 WL 529572, at *3-4; (preempting common law claims under Section 8 of the ITSA, but not applying preemption analysis to analogous Consumer Fraud Act claim); Webb Communications Group, Inc. v. Gateway 2000, Inc., 889 F. Supp. 316, 322-23 (N.D. Ill. 1995) (same).

## VI. Conspiracy

In Counts IX and XVII, T&B accuses defendants of civil conspiracy. T&B claims that the conspiracy began before Panduit hired Wimmer and continued after Wimmer began working at Panduit. According to T&B, defendants began conspiring by scheming together in order to take the computers, disks, and documents containing confidential information from T&B's offices (T&B Surreply at 15; T&B 12(N) at ¶¶ 23-26).[4] These allegations state nothing more than an accusation that defendants conspired to take T&B's confidential information by improper means – *i.e.*, by "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship...." 765 ILCS 1065/2(a). Therefore, the conspiracy allegations are redundant of T&B's ITSA allegations, and are barred by Section 8. *See* Composite, 962 F.2d at 1269; Learning Curve, 1999 WL 529572, at *3 ("the alleged theft of ideas cannot support multiple claims under different theories of recovery."). Furthermore, dismissal of a conspiracy claim is warranted where it merely duplicates an underlying tort claim that has already been pled. *See* Cenco, Inc. v. Seidman & Seidman, 686 F.2d 449, 453 (7th Cir.), *cert. denied*, 459 U.S. 880 (1982); Real Colors, Inc. v. Patel, 974 F. Supp. 645, 651 (N.D. Ill. 1997). T&B's conspiracy allegations regarding defendants' conduct prior to Wimmer's employment with Panduit merely restate T&B's misappropriation of trade secrets allegations – adding no new facts or parties – and therefore fail for this additional reason. *See* Thermodyne, 940 F. Supp. at 1310.

T&B also alleges that the conspiracy continued after Wimmer began working for

---

[4]It is not at all clear that T&B's factual allegations support this assertion in the first place. T&B has stated that Wimmer had taken the computer, disks and documents from his T&B office by the end of February 1992 (*see* T&B 12(N) at ¶¶ 8-10), but that Panduit did not seek out Wimmer for employment, and thereby begin the alleged conspiracy, until May 1992. (*See* T&B Resp. at 35-36; T&B 12(N) at ¶¶ 20-25).

Panduit. In support of this argument, T&B cites a long list of factual allegations detailing how Wimmer and Panduit misrepresented and concealed their use of T&B's confidential information. (*See* T&B 12(N) at ¶¶ 90-111; T&B Exh. G at 29-30). For example, T&B points out that on some occasions defendants concealed the source of the misappropriated sales information from their district managers and at other times instructed their sales staff to conceal and/or misrepresent the source of the information to outsiders. (*See id.*). These allegations fail to support a cause of action for conspiracy. In order to establish a civil conspiracy T&B must first show that there was an agreement between "two or more people." Pawlikowski v. Toyota Motor Credit Corp., 722 N.E.2d 767, 777 (Ill. App. 2 Dist. 1999). T&B fails to do so, for its allegations state that Panduit conspired with its own employees in order to cover up the company's use of T&B's trade secrets. Under Illinois law, however, there can be no civil conspiracy between a corporation and its agents. *See* Buckner v. Atlantic Plant Maintenance, Inc., 694 N.E2d 565, 571 (Ill. 1998); Healy v. CTP, Inc., 1995 WL 9203, at *2 (N.D. Ill. Jan. 9, 1995). T&B's factual allegations cannot support a civil conspiracy claim under Illinois law, and we therefore grant defendants' motion with respect to Counts IX and XVII.

## VII. Tortious Interference with the Confidentiality Agreement

Finally, in Count X, T&B alleges that Panduit tortiously interfered with the confidentiality agreement between T&B and Wimmer. In support of this claim, T&B states that Panduit encouraged and directed Wimmer to disclose T&B's secret sales data and related confidential information both before and after hiring him (Cplt. at ¶¶ 37-39; T&B 12(N) at ¶¶ 23-32). According to T&B, this conduct induced Wimmer to breach his confidentiality

agreement with T&B.  In response, defendants correctly argue that T&B's allegations are preempted by Section 8 of the ITSA.  Under the statute, misappropriation is defined to include the taking of confidential information by "inducement of a breach of a confidential relationship or other duty to maintain secrecy."  765 ILCS 1065/2(a).  Since T&B's allegations are based on a misappropriation of trade secrets, as defined by the statute, they are preempted.  Therefore, Count X fails.[5]

## CONCLUSION

For the reasons set forth above, we grant defendants' motion for summary judgment and accordingly dismiss Counts III through X and XII through XVII.  We grant summary judgment not bcause plaintiff has no right to a remedy but bcause the claims advanced in those counts are covered by the Illnois Trade Secrets Act.  Counts I, II, and XI remain intact.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 1 , 2000.

---

[5]In our prior order on defendants' partial motion for summary judgment, we upheld Count X based "on the absence of any other argument why summary judgment is appropriate on that count."  Thomas & Betts, 1999 WL 261861, at *4.  Having been presented with other, persuasive arguments against Count X, we now grant summary judgment in favor of defendants with respect to that count.